## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALFRED W. THOMAS, individually and on
behalf of all others similarly situated,

      Plaintiff,               CASE NO.:8:17-cv-02254-CEH-TBM

v.

WASTE PRO USA, INC., a Florida corporation,
et al.,

      Defendants.

_____/

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY AN FLSA COLLECTIVE
### ACTION AND AUTHORIZE NOTICE TO PUTATIVE OPT-IN PLAINTIFFS

Defendants, WASTE PRO USA, INC. ("Waste Pro USA"), and WASTE PRO OF

FLORIDA, INC. ("Waste Pro of Florida"), by counsel, oppose Plaintiff's Motion to Conditionally

Certify and Authorize Notice to Putative Opt-in Plaintiffs (the "Motion"), as follows:

### INTRODUCTION AND SUMMARY OF RESPONSE

On September 28, 2017, Plaintiff filed his Collective Action Complaint alleging that, while

employed by Defendants as a helper, his overtime wages were miscalculated, denying him proper

overtime wages in violation of the Fair Labor Standards Act ("FLSA").[1]  Plaintiff seeks to

conditionally certify a nationwide collective of all current and former helpers[2] nationwide who

---

[1] Plaintiff's live pleading is his Second Amended Collective Action Complaint. [Doc. 111].

[2] Plaintiff's inexplicably chooses to not define "Helpers." As such, the collective could include
those who: (a) help in the shop where trucks are maintained, (b) help at transfer stations where
residents can drop off solid waste, (c) help drivers on residential routes by rolling trash containers
from single family homes to a rear or side load truck, (d) help by performing valet trash pick-up,
or (e) help on commercial routes picking up roll-off containers, or (f) helping on commercial
beachfront routes utilizing front load trucks. [*See* Declaration of David Schneider, attached as
**Exhibit 3**, at ¶ 6; Declaration of Ralph Mills, attached as **Exhibit 4**, at ¶¶ 6 and 12; Declaration of

worked during the FLSA collective period[3] "who are or were paid via the date rate method for at least one workweek . . . and also worked at a location that had a *policy or practice* to either pay a half-day rate or pay non-discretionary bonuses." [Doc 108, pp. 1-2 (emphasis added).]

Despite the broad net of "Helpers" Plaintiff seeks to cast, he has a very specialized position in Panama City, Florida. He helps on a frontload garbage truck on a commercial beach route and is the only employee in his division that holds that position. [Deposition of Alfred Thomas, excerpts attached as **Exhibit 10**, at p. 21:20-22:4; 22:24-23:6.]

While Plaintiff touts a group of 17 helpers who have joined the case [Doc. 108, p. 17], this statement is very misleading.[4] In fact, nine (9) are the subject of pending motions for summary judgment because they are either time-barred or not helpers. [Doc. 112, 113, 114, and 118.][5]

Of the seven (7) remaining, the consents to opt-in are so lacking in any specificity that they are of no probative value. [Doc. 9-1, pp. 1, 5, 9, 11; Doc. 31, pp. 3, 4; Doc. 101, p. 5.] The declarations from some of the Opt-In Plaintiffs fare no better, as they are boilerplate and conclusory and are devoid of facts to establish any suffered from a violation of the FLSA.[6]

One Declarant, Frank Weather, does not even say where he worked in Florida in his Answers to the Court's Interrogatories or in his Declaration. [Doc. 48, pp. 4-6, Doc. 108-16.] The

---

Timothy Dolan, attached as **Exhibit 5**, at ¶ 5; Declaration of Adolfo Covelli, attached as **Exhibit 8**, at ¶¶ 4, 5 and 10.]

[3] Three years prior to the filing of the Collective Action Complaint, which was filed on September 28, 2017. [Doc. 111.]

[4] Two of the original three Plaintiffs were also dismissed. [Doc.117.]

[5] The disingenuous nature of the claim that there are 17 helpers that have joined the case is obvious from Plaintiff's statement that he is still "investigating" whether or not they were employed as helpers during the FLSA collective period. Plaintiff need only ask the others or review their interrogatories and employment records (which were provided months ago) to know for certain that nine (9) have no place in this litigation.

[6] The declarations from individuals claims that are not time-barred are from Melvin Tyler [Doc. 108-19], Kenneth Bethley [Doc. 108-18], Albert Moreland [Doc. 108-15], Frank Weather [Doc. 108-16], and Tony Wells [Doc. 108-20.]

other declarations are from only three divisions[7] and represent an extraordinarily small fraction of the "thousands" Plaintiff suggests are in the proposed collective.  [Doc. 111, ¶35.]

While he did not submit a declaration, there is a single Opt-In Plaintiff, Luis Martinez, who performs the same job as Plaintiff, albeit on an alternating basis.  Even so, Luis Martinez works on the other side of the State, with different supervisors, working conditions, training and compensation, and, again, there is no declaration from him in support of the Motion.

Plaintiff has failed to demonstrate that others who have been affected by a violation of the FLSA by Defendants will opt into this litigation if provided notice.  Plaintiff suggests three (3) distinct FLSA violations, yet none of the declarants provide a single detail as to when or how they were impacted by the alleged violations. [Doc. 108-15, 108-16, 108-18, 108-19, and 108-20.]  Plaintiff concedes as much by referencing a "policies or practices" at locations, regardless of whether Plaintiff or the declarants suffered from the "policies or practices." [Doc. 108, p. 2.]  Moreover, these declarants vary from Plaintiff in terms of duties, responsibilities, working conditions, training and supervisors, making collective treatment impracticable.  Plaintiff tries to misdirect the Court's attention to the unrelated trial of a driver to bolster his Motion because Plaintiff, in reality, fails to meet his requisite burden.  As such, the Motion should be denied.

## HEIGHTENED STANDARD OF REVIEW

The courts in the Eleventh Circuit generally utilize a "two-tiered approach" to determine whether the plaintiff and potential opt-ins are similarly situated and may proceed to trial collectively. *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F. 3d 1208, 1219 (11th Cir. 2001).  At the first

---

[7]   Albert Moreland is from the Palm Beach Division and John Carter and Luis Martinez are from the Fort Pierce Division, both of which are located in the Southeast Region of Waste Pro Florida, while Melvin Tyler and Kenneth Bethley worked at the Brookhaven Division of Delta Sanitation of Mississippi, LLC, a subsidiary of Waste Pro of Mississippi, Inc. [Doc. 108-15, 108-18, 108-19, 108-20.]  Again Frank Weather does not indicate where he worked.  [Doc. 108-16.]

stage, a plaintiff typically has the fairly lenient burden to prove (1) there are, in fact, putative collective members who wish to opt into the litigation, and (2) he and the putative collective members "are similarly situated." *Dybach v. Florida Dept. of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Hipp,* 252 F. 3d at 1219. However, in this particular case, the fairly lenient standard is not warranted in this case for two reasons.

First, "[w]here a period of discovery precedes the filing of the motion for conditional certification, the rationale for a more lenient standard at the preliminary stage of a case disappears." *Lewis-Gursky,* 2017 U.S. Dist. LEXIS 31135 at *9.[8] In *Lewis-Gursky,* Judge Bucklew noted that a different approach in the event discovery occurred was "supported by the decisional law of the district courts in this Circuit." *Id.* (citing *Udo v. Lincare, Inc.*, No. 8:13-CV-1899-T-23TGW, 2014 U.S. Dist. LEXIS 152166, 2014 WL 5354589, *10 (M.D. Fla. Aug 6, 2014)). The rationale is simple, as "[i]t makes little sense to allow significant time for conduct discovery on the conditional certification question and then to hold Plaintiff to the 'fairly lenient,' pre-discovery *Hipp* standard." *Id.* at *11.

Because of the length of time that passed before Plaintiff filed the Motion, the parties have engaged in substantial discovery including: (1) the Rule 30(b) deposition of Waste Pro USA; (2) the Rule 30(b)(6) deposition of Waste Pro of Florida; (3) the deposition of Plaintiff; (4) Answers to the Court's Interrogatories; (5) production of more than 5,700 pages of documents from Waste

---

[8]  *Walker v. Jefferson*, Case No. 2:130CV0524-RDP, 2016 U.S. Dist. LEXIS 36699, 2016 WL 1117643, at *4 (N.D. Ala. Mar. 22, 2016); *Holmes v. Quest Diagnostics, Inc.*, No. 11-80567-Civ-WILLIAMS, 2012 U.S. Dist. LEXIS 192821, 2012 WL 12876965, at *3 (S.D. Fla. June 14, 2012); *Ledbetter v. Pruitt Corp.*, No. 5:05-CV-329 (CAR), 2007 U.S. Dist. LEXIS 10243, 2007 WL 496451, at *2 (M.D. Ga. Feb. 12, 2007); *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1291 (N.D. Ga. 2014); *Devries v. Morgan Stanley & Co., LLC*, 2014 U.S. Dist. LEXIS 15862 at *12 (S.D. Fla. February 6, 2014); *Thedford v. Drive In of Evansville, Inc.,* No. 14-0390, 2014 WL 5520954, at *3 (N.D. Ala. Oct. 31, 2014); and *Hilley v. Tacala, L.L.C.*, No. 12-2691, 2014 U.S. Dist. LEXIS 38241, at *14 (N.D. Ala. Mar. 24, 2014).

Pro USA and Waste Pro Florida through multiple document requests; (6) answers to Plaintiff's interrogatories to Waste Pro USA and Waste Pro Florida; and (7) responses to Plaintiff's requests for admissions to Waste Pro USA.   After months of discovery, "courts have more 'carefully considered' the Parties' evidence at the initial stage." *Holmes v. Quest Diagnostics, Inc.*, 2012 U.S. Dist. LEXIS 192821, *8 (S.D. Fla. June 14, 2012).   As Plaintiff relies on the information obtained in discovery to support conditional certification, there can be no doubt that "careful consideration" of the evidence is merited.

Second, "the similarity requirement must be applied with some rigor" in a case involving a substantial number of potential plaintiffs.  *Lewis-Gursky v. CitiGroup, Inc.*, 2017 U.S. Dist. LEXIS 31135 at *8 (M.D. Fla. Mar. 6, 2017)(citing *Williams v. Accredited Home Lenders, Inc.*, 2006 U.S. Dist. LEXIS 50653, at *12, n.4 (N.D. Ga. July 25, 2006)(distinguishing the lenient standard when there are potentially 1,000 plaintiffs as compared to a much smaller potential collective as considered by the Eleventh Circuit in *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996)). In his Second Amended Collective Action Complaint, Plaintiff suggests that the potential class may be thousands of current or former employees.  [Doc. 111, ¶35.]  As such, a more rigorous review of the similarity requirement is justified at this stage.

The amount of discovery conducted (and relied upon by Plaintiff in his Motion) justifies careful consideration of the evidence presented.  In addition, given the substantial number of potential plaintiffs, the similarity requirement should be applied more rigorously. These heightened standards of review are both warranted as the "fairly lenient" standard set forth in *Hipp* is not appropriate in this particular action.

## RELEVANT FACTUAL BACKGROUND[9]

### A.     Business Structure.

Waste Pro USA is the parent company to various subsidiaries who provide professional solid waste collection and disposal and recycling services in nine (9) states pursuant to various commercial, municipal, subscription or military contracts.  [Declaration of Mike Allen, attached hereto as **Exhibit 1**, at ¶3.]  Across the nine (9) states, the subsidiaries of Waste Pro USA, or the subsidiaries of its subsidiaries, employ individuals who assist or help, in some form or fashion, with the services performed from any of the forty-seven (47) divisions.[10]

Waste Pro Florida is a subsidiary of Waste Pro USA.  It operates in five (5) distinct regions throughout Florida, each of which has multiple divisions.  [Dep. of Waste Pro Florida's corporate representative, Keith Banasiak, excerpts attached as **Exhibit 2**, at p. 14:1-7, 23:1-5.]  There are twenty-four (24) divisions within the five regions of Waste Pro Florida.  Each region is managed by a Regional Vice President who is employed by Waste Pro Florida.  [*Id.*, p. 14:1 – 15:10.]  Each division is managed by a Division Manager, who reports to the Regional Vice President.  [*Id.*, p. 23:1 – 15, 32:1 – 5.]

### B.     Autonomy of Regions and Divisions.

As a parent company, Waste Pro USA provides resources and support to its subsidiaries.

---

[9]     Plaintiff wrongly suggests that Defendants' are not able to file and rely upon counter declarations in opposition to the Motion.  Counter declarations and other record evidence are routinely reviewed (and relied upon) by the Courts in the Eleventh Circuit when determining whether to grant or deny conditional certification.  *See e.g. Holmes v. Quest Diagnostics, Inc.*, 2012 U. S. Dist. LEXIS 192821 at *3 (S.D. Fla. 2012) (wherein Quest submitted "extensive evidence" including declarations of 48 employees who worked with plaintiffs);[9] and *Alvarez*, 2018 U.S. Dist. LEXIS 84745 at *6-8 ("although this kind of evidence is usually evaluated in the decertification stage, even without considering the merits of the affidavits, the Defendants' evidence highlights the inadequacy of Alvarez's assertions.").

[10] Composite Exhibit A to the Michael Allen Declaration (Ex. 1) shows the facilities and contracts of the subsidiaries of Waste Pro USA.

However, each Regional Vice President is the Chief Executive Officer of his Region.  [Ex. 1, ¶ 5; *see also* Ex. 3, at ¶¶ 4-5; Ex. 4, at ¶¶ 3-5; Ex. 5, at ¶¶ 3-4; and Declaration of Russell Mackie, attached as **Exhibit 6**, at ¶ 2.]  He makes hiring and firing decisions, determines rates of pay for employees and pricing for contracts, chooses which contracts to try to obtain, sets the marketing strategy for both municipal and commercial contracts, and oversees all aspects of the operations in his region.  [*Id.*]  He has dedicated accounting, marketing, human resources and operations personnel for his region and the divisions within his region.  [*Id.*]

The number of hours worked by a helper each day depends on the assigned route or task.  [Ex. 3, ¶ 11; Ex. 5, ¶ 11.]  The hours and days worked by helpers (whether shop helpers or helpers who assist on routes) depends on the job or route assigned.  [*Id.*]  The collection routes are determined and assigned at the division level, without any involvement by Waste Pro USA.  [*Id.*]

A helper's starting rate of pay is determined locally by the Division Manager.  [Ex. 3, ¶ 10; Ex. 4, ¶ 14; Declaration of Frank Kramer, attached as **Exhibit 9**, at ¶ 3.]  The starting rate of pay varies among the five (5) regions of Waste Pro Florida, and also varies between divisions.  [*Id.*]  In some divisions, starting pay is based upon experience level, whereas in other divisions all helpers receive the same starting rate of pay.  [Ex. 2, 182:12 – 183:3.]  Waste Pro USA does not mandate that any employee of a subsidiary be compensated by the day or job rate or which divisions within any of its subsidiaries pay or do not pay bonuses to their employees.  [*Id.*, ¶¶ 8, 9.]  There is only one region that paid weekly or bi-weekly "safety bonuses" for a time during the FLSA Collective Period.  [Ex. 3, ¶ 9; Ex. 4, ¶ 17; Ex. 5, ¶ 13; Ex. 9, ¶ 7.]

Waste Pro Florida owns or leases all of its facilities in Florida.  [Ex. 3, ¶ 16; Ex. 4, ¶ 22; Ex. 5, ¶ 17; Ex. 6, ¶ 12.]  Waste Pro USA does not own any trucks [Ex. 2, p. 28:4 – 8], and Waste Pro Florida maintains the maintenance records for its vehicles.  [Ex. 2, p. 74:2 – 9.]

C.      **Plaintiff and the Broad Putative Class.**

Plaintiff's proposed class consists of anyone who could possibly fit within the generic term "Helper," which could be employees who assist in cleaning the yard, employees who help at transfer stations or landfills, employees who ride on the back of rear load residential garbage trucks, employees who help roll-off drivers with commercial routes, or the small set of employees who help with commercial front loading garbage trucks along beachfront routes.

Despite this sweeping undefined class of current and former employees, all but four (4) of the forty-seven (47) divisions have no current or former helpers that have expressed a desire to join this action and whose claims are not time-barred.[11]  There are no Opt-In Plaintiffs from Alabama, Arkansas, Georgia, Louisiana, North Carolina, South Carolina, Tennessee, the Northeast Region of Florida, or the Southwest Region of Florida.

The various helpers at each of the forty-seven (47) divisions have unique duties, responsibilities, working conditions, training, making class treatment impracticable. [Ex. 3, ¶¶6-12, 14, 15; Ex. 4, ¶¶6,7, 9-17; Ex. 5, ¶¶ 5-15; Ex. 6,¶¶5-9.]  Plaintiff and the Opt-In Plaintiffs whose claims are not time-barred were supervised by autonomous supervisors and division managers that reported to different Regional Vice Presidents, each of which implemented their own unique compensation practices, making class treatment inappropriate. [*Id.*]  Notably, Plaintiff and Declarants have not suffered from the claimed FLSA violations, despite boilerplate misleading

---

[11]   A single division in Central Florida, the Sanford division, has an Opt-In Plaintiff, Tony Wells. Two divisions in Southeast Region of Florida, the Palm Beach and Fort Pierce divisions, have Opt-In Plaintiffs, Albert Moreland (Palm Beach), John Carter (Fort Pierce) and Luis Martinez (Fort Pierce).  A single division in Mississippi, Brookhaven, has Opt-In Plaintiffs, Kenneth Bethley and Melvin Tyler. Opt-In Plaintiff Frank Weather has never disclosed where he worked in Florida. [Doc. 48, pp. 4-6; Doc. 108 108-16].  Defendants assert that the boilerplate consents and declarations are insufficient to provide any probative value; however, at a minimum, there are more than forty-two (42) divisions in the 9 state footprint of Waste Pro USA subsidiaries that have no basis whatsoever for inclusion in the collective.

declarations that appear to suggest otherwise.

For his part, Plaintiff is a helper, but his job at the Panama City division of Waste Pro Florida is very unique.  Unlike individuals who assist in the collection of residential solid waste, Plaintiff assists with the collection of commercial solid waste on routes that run along Panama City beach.  Plaintiff, unlike helpers who ride on the back of a rear load garbage truck and roll and tip garbage cans weighing less than 95 pounds from in front of single family homes, sits inside a front load vehicle and, when needed, pulls 2 yard to 8 yard dumpsters and compactors weighing up to 1800 pounds to the truck so that the truck's arm can lift the compactors over the truck to collect the solid waste.  [Ex. 4, ¶¶ 10-11; Ex. 8, ¶ 11 (discussing Beachfront Commercial Helpers).] Plaintiff is the only employee to perform this function at the Panama City location [Ex. 10, 21: 20-22:4; 22:24-23:6] and the physical requirements of this job are much more physically challenging than for those who assist on residential routes.[12]  While there are a few of these individuals who perform this job, only one has submitted a consent to opt-in and he alternated between helping on residential routes and a commercial beach route in the Fort Pierce division, nearly 500 miles from Plaintiff's division, with different training, supervisors, and compensation. [Ex. 8, ¶¶ 10 -12.]

### D.    The Claimed FLSA Violations.

Plaintiff's claim is that, as a day rate employee, he was subjected to *policies or practices*

---

[12]  Plaintiff cites to an Exhibit "N" and an Exhibit "V" in an attempt to convince that all "Helpers" "perform the same duties" and are "similar."  [Doc. 108, p. 8].  However, these Exhibits actually defeat his argument that all Helpers are similarly situated because the job description is not for the job that Plaintiff performs.  Exhibit "N" reveals that the position describes a Residential Helper, who "picks up solid waste and places it in the back of a rear load garbage truck" and "[e]nsures garbage and recyclables *at residences* are picked up and transferred properly . . . ."  Exhibit "N" at paragraphs 1 and 3 (emphasis added).  Residential Helpers must be able to "push and pull independently (unassisted) 50 pounds between 800 and 1000 times a day" and have the "[a]bility to ride on the outside of the truck while servicing *residential customers* in low MPH areas."  *Id.* at p. 2.  A review of Exhibit "V" also describes the duties and functions of the Residential Helper position, and the documents also identify the "Helper" position as a "Residential Helper" position.

that violated the FLSA by: (a) paying half a day rate if 4 or less hours were worked in a day, (b) paying non-discretionary weekly or bi-weekly safety bonuses if there were no absences and no safety violations, or (c) promising and paying non-discretionary help pay or bump pay for helping on additional routes after the completion of the assigned route.  However, Plaintiff admitted in his deposition that he had never received a safety bonus. [Ex. 10, 87:22-88:7.]  Moreover, Plaintiff's payroll records reveal that he was paid a full day for working less than 4 hours on June 15, 2018. [Ex. 4, ¶ 18.]  Even the "bump" pay he was paid is different than what is described in the Motion. [*Compare* Doc. 111, ¶53 ("Help bonuses. . . are promised to Plaintiff") *with* Ex. 10, 91:13-101:4 (request for bump pay is made and given at the discretion of the supervisor).]

### E.   Opt-In Plaintiffs (Including Declarants).

Plaintiff attempts to pad his argument for collective certification by contending that 17 others have consented to join the action. [Doc. 108, p. 17.]  However, there are nowhere near 17 current or former employees whose claims are not time barred and who have been a victim of any of the claimed FLSA violations.  The following chart illustrates the deficiencies:

| Employee | Summary Judgment Motion | Declaration | Division | Position | Lack of FLSA Violations |
|---|---|---|---|---|---|
| Thomas, Alfred (Pl.) | | | Mississippi & Panama City | Commercial Helper Beachfront | Paid full day for 2 hours; no safety bonuses |
| Askins, Keith | Yes [Doc. 114] | | | | |
| Askins, Vincent | Yes [Doc. 112] | | | | |
| Bethley, Kenneth | | Yes | Brookhaven | Residential Helper | No ½ days, no safety or other no non-discretionary bonuses |
| Carter, John | | | Ft. Pierce | Alternated non-CDL driver and | No violations alleged in a Declaration and |

|  |  |  |  | Residential Helper | paid several full days for 4.0 hours |
|---|---|---|---|---|---|
| Dean, Brandon | Yes [Doc. 112] |  |  |  |  |
| Dean, James (Eddie) | Yes [Doc. 112] |  |  |  |  |
| Fils-Aime, Nixon | Yes [Doc. 118] |  |  |  |  |
| Martinez, Luis |  |  | Ft. Pierce | Alternated Residential and Commercial Beachfront Helper | No specific violations alleged in a Declaration |
| Moreland, Albert |  | Yes | Palm Beach | Residential Helper | No ½ days and paid full day for 4.0 hours |
| Ramey, Gerald | Yes [Doc. 114] |  |  |  |  |
| Rashford, Evon | Yes [Doc. 114] |  |  |  |  |
| Smith, Jewann | Yes [Doc. 113] | Yes |  |  |  |
| Tyler, Melvin |  | Yes | Brookhaven | Residential Helper | No ½ days, no safety or other non-discretionary bonuses |
| VanBrussell, David | Yes [Doc. 112] |  |  |  |  |
| Weather, Frank |  | Yes | Unknown |  |  |
| Wells, Tony |  | Yes | Sanford |  | No ½ days and no safety bonuses |

As to the four (4) individuals who filed declarations and whose claims are not time barred and who actually identify where they worked,[13] none have been subjected to any half day policy.[14]

---

[13]    Jewann Smith's claim is time barred [Doc. 113] and Frank Weather provided not information as to where he worked. [Doc. 48, pp. 4-6; Doc. 108 108-16].

[14]    While other Opt-In Plaintiffs (Luis Martinez and John Carter) filed consents, they are of no probative value as they lack any specifics whatsoever.  Moreover, Adolfo Covelli's Declaration reveals that these Opt-In Plaintiffs were not subject to any half day policy and actually show the impracticality of collective certification given their hybrid positions.  [Ex. 8.]

Similarly, three (3) of the four (4), Kenneth Bethley, Melvin Tyler and Tony Wells have <u>never</u> received a "safety" bonus. [Ex. 5, ¶ 13; Decl. of Roland Joyner, attached as **Exhibit 7**, at ¶¶ 8 and 9.] Indeed, the only Declarant who did receive safety bonuses came from the Palm Beach, Florida division. [Doc. 108-15, ¶ 9.] As to help pay, there is only one (1) Declarant who affirmatively states that he ever received it, and he is in the Sanford, Florida, division. [Doc. 108-20.]

As for job functions and working conditions, Plaintiff is clear that he is <u>not</u> a Residential Helper since working in Panama City, Florida. [Ex. 10, p. 88:2-7.] Plaintiff himself recognizes that his job and working conditions are different from helpers on residential routes. [*Id*. at 116: 6-23; 117:6-119:4.] Despite this sharp distinction, the Declarants are all helpers on residential routes.[15]

## <u>ARGUMENT AND AUTHORITIES</u>

Regardless of which standard is applied to this action, Plaintiff must demonstrate "a reasonable basis for crediting [his] assertions that aggrieved individuals existed in the broad class that [he] proposed." *Haynes v. Singer Co., Inc.*, 696 F. 2d 884, 887 (11th Cir. 1983). In addition to proving others wish to join the litigation, Plaintiff must establish that either: (1) he and putative collective members were subjected to a "unified policy, plan or scheme" causing the same FLSA violation; or (2) a "commonality between the basis for her claims and that of the potential claims of the proposed collective *beyond the mere facts of job duties and pay provisions*". *Hipp*, 252 F.3d at 1218; *Horne v. United Svcs. Auto. Ass'n*, 279 F.Supp.2d 1231, 1234 (M.D. Ala. 2003).

### A.   <u>Plaintiff Has Not Proven Others Desire to Join This Action.</u>

In establishing others desire to join this action, Plaintiff cannot rely on boilerplate

---

[15]   Luis Martinez, while not a Declarant, alternates between a helping on a residential route and helping on the commercial beachfront route. [Ex. 8, ¶ 7.]

declaration or "rely on speculative, vague and conclusory allegations." *Alvarez v. Sun Commodities, Inc.*, 2012 U.S. Dist. LEXIS 85177 at *4 (M.D. Fla. June 20, 2012) (*citing Rodgers v. CVS Pharm., Inc.*, 2006 U.S. Dist. LEXIS 23272 at *15 (M.D. Fla. Mar. 22, 2006)); Rather, Plaintiff is required to offer "detailed allegations supported by affidavits" which engage the Defendants' affidavits and other evidence to the contrary. *Grayson v. K Mart Corp.*, 79 F. 3d 1086, 1097 (11th Cir. 1996).[16] To satisfy this burden and have any probative value, the declarations supporting the Motion must attest to facts, not beliefs. *Ulysse v. Divosta Bldg. Corp.*, 2006 U.S. Dist. LEXIS 89414, *4 (S.D. Fla. 2006) (affidavit containing "self-serving personal beliefs" was "not probative of the similarly situated question"). Additionally, to provide any credible support, declarations must not rely upon conclusions[17] or hearsay.[18]

A review of the Declarations in support of the Motion reveal the lack of specificity and boilerplate nature. [Doc. 108-15, 108-16, 108-18, 108-19, and 108-20]. They contain mere conclusions, beliefs and hearsay, not detailed facts. Because Plaintiff has not satisfied his burden of showing that other former and current employees desire to opt-in through sufficient, detailed declarations, "the Court should decline the certification of a collective action to avoid the 'stirring

---

[16]    As to Plaintiff's reliance upon the *Andreu* verdict, "[t]he mere fact that Defendant has been sued before does not necessarily mean that there are other potential plaintiffs who join to join *the instant suit*." *Alvarez*, 2012 U.S. Dist. LEXIS 85177 at *9 (citing *Rodgers*, 2006 U.S. Dist. LEXIS 23272 at *3) (emphasis in original). In any event, the facts in the *Andreu* case differ in that *Andreu* was a driver during the relevant time period, not a helper, with very different job duties and functions than Plaintiff. Additionally, *Andreu* abandoned his effort to certify a collective action.

[17]    *Robinson v. Dolgencorp, Inc.*, 2006 WL 3360944, *21 (M.D. Fla. 2006)(conclusory statement that other employees worked uncompensated overtime was insufficient to support conditional certification); *Kelley v. Taxprep, Inc.*, 2014 U.S. Dist. LEXIS 184589 *4-5 (M.D. Fla. April 2, 2014) (denying conditional certification and noting, "[t]hese four affidavits, which are mostly identical, of Defendant's former or current employees consist of completely conclusory assertions that the Court finds are not probative of the similarly situated question.").

[18]    *Palacios v. Boehringer Ingelheim Parm. Inc.*, 2011 WL 6794438, *12-13 (S.D. Fla. 2011) (declaration that I have spoken to multiple other former employees. . . who advised that. . ." was inadmissible hearsay and provided no support for conditional certification).

up' of litigation through unwarranted solicitation" through the notice process. *Herrera v. Mattress Firm, Inc.*, 2017 U.S. Dist. LEXIS 157453, *12 (Sept. 26, 2017).

### B.      **Plaintiff Has Not Proven a Common Scheme or Plan.**

Plaintiff's generic declarations do nothing to establish a common scheme or plan to violate the FLSA.  Conversely, Defendants' Declarations establish autonomy in all areas of operations at the local level.  This cuts against any suggestion of common policies and practices Plaintiff must show.  The varied job requirements, working conditions, training, methods of compensating and evaluating helpers in the different divisions establish a lack of unified plan or scheme.  As such, conditional certification on that basis is not warranted.

### C.      **Plaintiff Has Not Shown Others are Similarly Situated.**

Alleging simply that all "Helpers" have similar job titles is not enough, as Plaintiff has done.  Courts in the Middle District have "routinely" denied conditional certification where the plaintiff relies on such conclusory allegations.  *Alvarez*, 2012 U.S. Dist. LEXIS 85177 at *8, ft. 3.

Plaintiff must make a showing of similarity between the basis for his claim and the potential claims of the putative opt-in members, beyond mere generic job title of "Helper".  *See Walker v. Jefferson Cnty. Bd. of Educ.*, 2016 U.S. Dist. LEXIS 36699 at *9 (N.D. Ala. Mar. 22, 2016) ("a court must look at the nature of each employee's job duties, and the degree to which evidence regarding the plaintiff's job duties can be applied to all other employees.").  In order for Plaintiff and any opt-ins to be similarly situated, Plaintiff must show that they all "were all subject to, and *adversely affected by*, the same pay policies and practices."  *Whineglass v. Smith*, 2012 U.S. Dist. LEXIS 175511, at *13 (M.D. Fla. Nov. 14, 2012) (citations omitted) (emphasis added).  In other words, Plaintiff must provide "evidentiary support that [he], like other members of the putative opt-in plaintiff class, were the *victims* of employment practices which resulted in these violations."

*Pares v. Kendall Lakes Auto, LLC*, 2013 U.S. Dist. LEXIS 90499, at *18 (S.D. Fla. Jun. 27, 2013) (emphasis added) (internal quotation and citation omitted); *see also Hilley v. Tacala, LLC*, 2014 U.S. Dist. LEXIS 38241, at *41-42 (N.D. Ala. 2014) ("[A]ll members of the collective action must have suffered one of these violations" alleged by the plaintiff as violating the FLSA); *Briggins v. Elwood Tri, Inc.*, 882 F. Supp. 2d 1256, 1267-68 (N.D. Ala. 2012) (decertifying class where some of the class members were subjected to the policy at issue and others were not).  Allegations that a defendant has a company-wide pay policy which violates the FLSA, without more, is insufficient. *Gonzalez v. Hair Club for Men, Ltd., Inc.*, 2007 U.S. Dist. LEXIS 26160 at *9-10 (M.D. Fla. 2007).

"The key consideration is that to be 'similarly situated,' there must be substantial allegations that potential members were together the victims of *a single decision, policy, or plan.*" *Hart v. JPMorgan Chase Bank, N.A.*, No. 12-00470, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (emphasis added). The Motion falls short of meeting his burden to show that he and other putative opt-in persons were are similarly situated and "together victims of a single decision, policy, or plan." *Hart*, 2012 WL 6196035, at *5.

Plaintiff's proposed collective includes purported helpers who were paid half-days and bonuses, along with helpers who are not alleged to have received either.  Notably, Plaintiff does not allege that all members of the proposed collective were "adversely affected by" the alleged FLSA violations set forth in the Second Amended Complaint. *Whineglass, supra,* 2012 U.S. Dist. LEXIS 175511, at *13.  Instead, Plaintiff seeks conditional certification of a group that includes Helpers who were *possibly affected* by either practice, as well as all Helpers "who worked at a location that had a policy or practice to either pay a half-day rate or pay non-discretionary bonuses," even if those Helpers never received either.  Because the proposed collective includes helpers who are not even alleged to be "victims" of the practices at issue, conditional certification

15

would be improper.  *See Hilley*, 2014 U.S. Dist. LEXIS 38241, at *41 ("[A]ll members of the collective action must have suffered one of these violations"); *Pares, supra*, 2013 U.S. Dist. LEXIS 90499, at *18 (all members of the collective must be "victims" of the practices at issue).

The purpose of a class is efficiency.  The desire is to resolve in one suit a systematic or class-wide problem.  Thus, Plaintiff was required to identify that problem.  In this action, there does not exist a "common policy or plan," despite Plaintiff's unsupported conclusion to the contrary.  Even if a common policy existed (which it does not), conditional certification is inappropriate in this action because the differences in the putative collective "would lead to individual inquiries that would 'eviserate[] all notions of judicial economy that would otherwise be served by conditional class certification.'" *Lewis-Gursky*, 2017 U.S. Dist. LEXIS 31135 at *14.

### D.   Plaintiff Did Not Show that Waste Pro USA Jointly Employs Plaintiff.

Plaintiff cite to this Court's decision in *Nadreau v. Lush Cosmetics, Inc.*, 2011 U.S. Dist. LEXIS 160487 (M.D. Fla. 2011), in support of his contention that "issues relating to joint employment are immaterial at the conditional certification stage." [Doc. 108, p. 21.]  In *Nadreau*, however, this Court considered the joint employer issue at the conditional certification stage.  *Nadreau*, 2011 U.S. Dist. LEXIS 160487, *9-10.   Defendants submit that it is necessary for the Court to consider whether Waste Pro USA jointly employed Plaintiff, considering that he seeks conditional certification of all Helpers employed by any subsidiary of Waste Pro USA, and not only Waste Pro Florida.  Plaintiff seek certification of this group ***solely*** on the basis that Waste Pro USA is the joint employer of all employees of its subsidiaries.  Plaintiff has not sued any of those subsidiaries in this action; nor has Plaintiff presented ***any*** evidence as to the pay practices of any of Waste Pro USA's subsidiaries other than Waste Pro Florida.

To determine whether an employer-employee relationship exists under the FLSA, courts "look at the 'economic reality' of all the circumstances" surrounding the activity."  *Villarreal v.*

*Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).  Joint employment is also subject to the economic reality test, and the Eleventh Circuit has set forth the following factors to evaluate an alleged joint employer relationship: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and payment of wage; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities.  *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012).  "No one factor is dispositive and the existence of the joint employer relationship depends on the economic reality of the circumstances."  *Id.* at 1177.

Under the first and second factors in *Layton*, the Court must consider the nature and degree of control exercised by Waste Pro USA over Helpers, as well as the degree to which Waste Pro USA supervised the Helpers' work.  Here, Waste Pro Florida exercised complete control and supervision over Helpers, including all issues related to their hiring, training, and conditions of employment.  [*See* Factual Background, Section B, *supra*.]

The third factor in *Layton* is the power to determine the pay rates or the methods of payment to employees.  Waste Pro Florida exercised complete control over the rate of pay and the methods of payment to its employees, including helpers.  [*See* Factual Background, Section B, *supra*.]  The fourth factor considers whether the alleged joint employer had the right to hire, fire, or modify the employment conditions of the workers.  *Layton*, 686 F.3d at 1176.  As discussed above, hiring and firing of helpers was handled exclusively by Waste Pro Florida at the regional or division level.  [*See* Factual Background, Section B.]  Any other conditions of employment were also determined by Waste Pro Florida.  [*Id.*]

The fifth factor considers the responsibility for the preparation of payroll and the payment of wages. *Layton*, 686 F.3d at 1176. Both of these tasks were handled by the human resources department of Waste Pro Florida. [*See* Factual Background, Section B.] The Court must also consider the sixth factor: who owned the facilities where Helpers performed their work for Waste Pro Florida. All such facilities were owned by Waste Pro Florida. [*Id.*] The seventh factor asks whether the workers performed a "specialty job integral to the business." *Layton*, 686 F.3d at 1176. This factor, however, is only applicable in cases where there is a dispute as to whether the workers were employees or independent contractors. *See, e.g., Hankerson v. Ft. Lauderdale Scrap, Inc.*, 2016 U.S. Dist. LEXIS 122336, at *7 (S.D. Fla. 2016).

Finally, the Court should consider the relative investments of Waste Pro USA and Waste Pro Florida in equipment and facilities utilized by Helpers. *Layton*, 686 F.3d at 1176. As discussed above, Waste Pro Florida leases or owns the facilities utilized by Helpers, and Waste Pro USA does not own any trucks. [*See* Factual Background, Section B.]

Plaintiff relies heavily on evidence that Waste Pro USA provided administrative and other support functions to its subsidiaries. Numerous courts have held, however, that a parent company providing such support functions to a subsidiary is insufficient to establish FLSA joint employer status. *Braden v. County of Washington*, 2010 U.S. Dist. LEXIS 40084, *7 (W.D. Pa. Apr. 23, 2010); *see also Singh v. 7-Eleven, Inc.*, 2007 U.S. Dist. LEXIS 16677 (N.D. Cal. 2007); *Lovett v. SJAC Fulton IND I, LLC*, 2016 U.S. Dist. LEXIS 111659, *13-14 (N.D. Ga. Aug. 22, 2016); *Gonzalez v. HCA, Inc.,* 2011 U.S. Dist. LEXIS 95774, at *34-39 (M.D. Tenn. Aug. 24, 2011).

Plaintiffs also point to statements on Waste Pro USA's websites that do not differentiate between Waste Pro USA and its subsidiaries, and he contends that all of the Waste Pro entities hold themselves out to the public as the same company. Similar arguments have been rejected by

18

this Court. *Heidbrink v. ThinkDirect Mktg. Grp.*, 2014 U.S. Dist. LEXIS 98705, *8 (M.D. Fla. July 21, 2014. This Court noted that "courts do not consider statements in websites, annual reports, and press releases reliable evidence that the parent exercises 'operational control,'" and that plaintiffs "do not point to any facts, let alone evidentiary support, to establish such a relationship between Blackstreet and ThinkDirect." *Id.* (citations omitted).

### E.     Plaintiff's Proposed Notice is Insufficient.

In the event he prevails on his Motion, Plaintiff seeks to provide notice to all "Helpers" at all Waste Pro USA subsidiaries nationwide, regardless of their lack of similarly. Motion of p. 22. The proposed notice is overly broad and otherwise deficient, and should not be utilized.

The proposed notice clearly should not be provided to all "Helpers" nationwide for the reasons set forth above. As such, the description in the proposed notice of the putative collective members is far too broad. *See Teahl v. Lazy Flamingo, Inc.*, 2015 U.S. Dist. LEXIS 4444 at * 19-20 (M.D. Fla. Jan. 14, 2015).

The proposed notice is also misleading on numerous fronts. First, the title stating that it is "Court-Authorized," leaves the impression that the Court has actually authorized this action when, in fact, the Court has not. *See Holmes v. Swissport Fueling, Inc.*, 2017 U.S. Dist. LEXIS 153039 at *36-37 (M.D. Fla. Sept. 1, 2017). Second, there is only one named Plaintiff in this action, yet the proposed notice refers to "Plaintiffs." Third, the proposed notice (through Section IV) appears to be an attempt by Plaintiff's counsel to actively solicit clients for Plaintiff's counsel, rather than advising recipients as to the impact of not joining the case. Section IV should simply advise that recipients who do not join the case will not be impacted in any manner by any judgment in, or settlement or dismissal of, the case. Fourth, Section V of the proposed notice contains language suggesting that Defendants may attempt to fire or retaliate against a recipient who joins the case,

rather than simply stating that participating in the case with not adversely impact the recipient's employment.  Fifth, the proposed notice fails to include language advising potential collective members that (a) they have the right to engage their own counsel; (b) they may be required to respond to discovery requests, including traveling to the Middle District of Florida at their own expense for a deposition; (c) they may be required to travel to the Middle District of Florida at their own expense to be a witness in a trial; and (d) they may be responsible to pay the attorneys' fees and costs of Defendants if they not do prevail in this case.  *See Lockwood v. CIS Servs., LLC*, 2017 U.S. Dist. LEXIS 202821 at *12 (M.D. Fla. Sept. 26, 2017); *Holmes*, 2017 U.S. Dist. LEXIS 153039 at *33-34.  Sixth, the proposed notice does not state that the Court has only conditionally certified the collective action, and that the Court may de-certify it at a later date thereby removing them from the case.  *See Holmes*, 2017 U.S. Dist. LEXIS 153039 at *33-34.

The proposed consent is also flawed as it fails to include acknowledgement of:  (a) their right to their own counsel; (b) their obligations to participate, at their own expense, in discovery and trial; (c) their potential obligation to pay the attorneys' fees and costs of Defendants in the event they do not prevail in the case; and (d) that the Court has only conditionally certified the case and may later de-certify the case.  *See Holmes*, 2017 U.S. Dist. LEXIS 153039 at *33-38.

Finally, Defendants object to the request that a reminder notice be sent after the notice is sent.  The proposed notice (as revised) is sufficient notice to potential collective members.  A reminder notice is unnecessary and only serves as a solicitation by Plaintiff's counsel.

## **CONCLUSION**

Plaintiff's attempt to justify a nationwide notice to thousands of former and current employees of Waste Pro USA's subsidiaries falls far short of the proof required for conditional certification.  Therefore, Plaintiff's Motion should be denied.

Respectfully submitted this 29th day of June, 2018.

STOVASH, CASE & TINGLEY, P.A.

By:  _/s/Matthew J. Pearce_
    Amy S. Tingley, Esquire
    Florida Bar No. 0068871
    J. Scott Hudson, Esquire
    Florida Bar No. 0725137
    Matthew J. Pearce, Esquire
    Florida Bar No. 0108368
    The VUE at Lake Eola
    220 N. Rosalind Avenue
    Orlando, Florida 32801
    Telephone:  (407) 316-0393
    Telecopier:  (407) 316-8969
    *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to the below-named attorney this 29th day of June, 2018.

| | |
|---|---|
| ___HAND DELIVERY | Greg I. Shavitz, Esquire |
| ___U.S. MAIL | Alan L. Quiles, Esquire |
| ___FAX TRANSMISSION | Michael J. Palitz, Esquire |
| __EMAIL TRANSMISSION | Logan A. Pardell, Esquire |
| _X_ECF NOTICE | Shavitz Law Group, P.A. |
| | Suite 285 |
| | 951 Yamato Road |
| | Boca Raton, Florida 33431 |
| | gshavitz@shavitzlaw.com |
| | aquiles@shavitzlaw.com |
| | mpalitz@shavitzlaw.com |
| | lpardell@shavitzlaw.com |
| | *Counsel for Plaintiffs* |

| | |
|---|---|
| ___HAND DELIVERY | Richard E. Hayber, Esquire |
| ___U.S. MAIL | Hayber Law Firm LLC |
| ___FAX TRANSMISSION | 221 Main Street |
| __EMAIL TRANSMISSION | Suite 502 |
| _X_ECF NOTICE | Hartford, Connecticut 06106 |
| | rhayber@hayberlawfirm.com |
| | *Counsel for Plaintiffs* |

___HAND DELIVERY   Nicholas A. Migliaccio, Esquire
___U.S. MAIL      Jason S. Rathod, Esquire
___FAX TRANSMISSION  Whitfield, Bryson & Mason, LLP
___EMAIL TRANSMISSION Suite 605
_X_ECF NOTICE     1625 Massachusetts Ave NW
           Washington, DC 20036
           nmigliaccio@classlawdc.com
           jrathod@classlawdc.com
           *Counsel for Plaintiffs*


___HAND DELIVERY   Daniel Aaron Rihn, Esquire
___U.S. MAIL      Robert Peirce & Associates, PC
___FAX TRANSMISSION  707 Grant Street
___EMAIL TRANSMISSION Suite 2500
_X_ECF NOTICE     Pittsburgh, Pennsylvania 15219-1912
           arihn@peircelaw.com
           *Counsel for Plaintiffs*


         /s/ *Matthew J. Pearce*
         Matthew J. Pearce