UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALFRED W. THOMAS,

     Plaintiff,

v.                                        Case No: 8:17-cv-2254-T-36CPT

WASTE PRO USA, INC. and WASTE PRO
OF FLORIDA, INC.,

     Defendants.
_____/

## **O R D E R**

     This matter comes before the Court upon Plaintiff Alfred Thomas and the Opt-In Plaintiffs' Motion to Conditionally Certify an FLSA Collective Action and Authorize Notice to Putative Opt-In Plaintiffs and Incorporated Memorandum of Law (Doc. 108), Defendants' Memorandum in Opposition (Doc. 123), and Plaintiffs' Reply in Support (Doc. 142).  The Court held a hearing on the Motion to Conditionally Certify on December 21, 2018.  Doc. 179.

     In the Motion to Conditionally Certify, Plaintiff contends that conditional certification is appropriate and requests that the Court (1) order Defendants to produce information pertaining to each collective member, (2) authorize notice with a form of consent to join to members of the proposed collective, and (3) approve Plaintiff's proposed reminder notice.  Doc. 108.  Defendants oppose conditional certification, arguing that Plaintiff has not shown they are joint employers, a more stringent standard applies to conditional certification based on the procedural posture of this case, Plaintiff has not met the standard for conditional certification, and even if he has, his proposed notice is insufficient.  Doc. 123.  The Court, having considered the motion and being fully advised in the premises, will grant Plaintiffs' Motion to Conditionally Certify an FLSA

Collective Action and Authorize Notice to Putative Opt-In Plaintiffs and Incorporated Memorandum of Law.

## I.    BACKGROUND

### A.    The Class and Claims

This is a collective action filed pursuant to § 216(b) of the FLSA by Plaintiff Alfred W. Thomas ("Thomas" or "Plaintiff") pertaining to the pay of certain "Helpers" employed by Defendants Waste Pro USA, Inc. ("Waste Pro USA"), and Waste Pro of Florida, Inc. ("Waste Pro of Florida") (collectively, "Defendants"), which alleges willful violations of the FLSA.  Doc. 111 ¶¶ 1, 64, 72.  Waste Pro USA is the parent company to various subsidiaries who provide professional solid waste collection and disposal and recycling services in nine states pursuant to various commercial, municipal, subscription or military contracts.  Doc. 123-1 ¶ 2.  One of those subsidiaries is Waste Pro of Florida.  *Id.* at 6.

In the Second Amended Complaint, Plaintiff alleges that the action is brought on behalf of himself and

> the National Collective Action Members who have worked for Defendant Waste Pro USA as Helpers, however variously titled, anywhere in the United States, between September 28, 2014 and the date of final judgment in this matter who elect to opt-in to this action and who, at any point during this time, were paid a day rate and also worked at a location that had a policy or practice to either pay a half-day rate or pay non-discretionary bonuses.

Doc. 111 ¶ 32.

Plaintiff defines the Proposed FLSA Collective nearly identically in the instant Motion to Conditionally Certify, stating that he and the Opt-In Plaintiffs

> request the entry of an Order conditionally certifying a[n FLSA] collective of and permitting Court-supervised notice to all Helpers nationwide who work or worked for Defendants . . . at any time since September 27, 2014 . . . to the present (the "FLSA Collective Period") who are or were paid via the day rate method for at least one workweek during the FLSA Collective Period (the "Proposed FLSA

2

Collective") and also worked at a location that had a policy or practice to either pay a half-day rate or pay non-discretionary bonuses.

Doc. 108 at 1-2.

The Second Amended Complaint raises two causes of action: (1) violation of the FLSA by Defendants, jointly and severally, by failing to pay Plaintiff and the National Collective Action Members time and a half overtime premium pay when they work more than forty hours per week, and (2) violation of the FLSA by Waste Pro USA by failing to pay Plaintiff and the National Collective Action Members time and a half overtime premium pay when they work more than forty hours per week. *Id.* ¶¶ 58-73.

To support these claims, Plaintiff alleges that he worked more than forty hours per week as a "Helper" and was paid bi-weekly. Doc. 111 ¶¶ 36-37. Plaintiff's pay was a flat rate for a day's work, and the rate was cut in half or converted to an hourly rate if he worked less than four hours in a day. *Id.* ¶ 38. When Plaintiff worked overtime hours, his regular rate was calculated by dividing his total pay for the two-week pay period by the total number of hours worked and overtime wages were paid at a half-time rate. *Id.* ¶ 40. Thus, during a two-week/ten-day period during which Plaintiff's regular day-rate was $100 per day, his regular pay would be $1,000. *Id.* ¶ 41. However, in a week when he worked 97.42 hours, Defendants divided his regular pay of $1,000 by 97.42, determined his regular rate to be $10.26 per hour, and paid him $5.13 per hour for the 17.42 hours of overtime. *Id.* This calculation appears to be intended to pay Plaintiff for a normal work day of eight hours. *Id.* ¶ 42.

Plaintiff further alleges that 29 C.F.R. § 778.112 requires a day rate plan to pay a flat sum for a day's work without regard to the number of hours worked in the day. *Id.* ¶ 44. Because Plaintiff was compensated for overtime and his pay was cut in half when he worked less than four hours per day, he alleges that he was not paid a flat sum for a day's work without regard to the

number of hours worked in the day in violation of the FLSA. *Id.* Plaintiff alleges that had a proper pay calculation been used, he would have been paid more. *Id.* ¶¶ 47-48.

Plaintiff also alleges that Defendants paid safety bonuses of $50 or $100 per week and help bonuses, both of which were known as "bump pay". *Id.* ¶ 50. The safety bonuses were given for performing work without any safety infractions and for working complete workweeks without missing any days. *Id.* ¶ 51. Help bonuses were given for assisting on additional shifts. *Id.* ¶ 53. Because these bonuses were not discretionary, but were promised, they constituted additional compensation that violated the FLSA's day rate regulation. *Id.* ¶¶ 51-54.

Plaintiff alleges that the unlawful policies described with respect to his pay applied to all other members of the collective action. *Id.* ¶ 56.

### B.    Plaintiff

Plaintiff works for Waste Pro of Florida in Panama City. Doc. 123-9 at 7:1-2. He typically arrives at work around 3:00 in the morning and continues working until his route is complete. *Id.* at 8:9-12, 42:7-9. Some weeks, he works weekdays and weekends, and some weeks he has weekends off. *Id.* at 49:15-50:12. When he arrives at work, he clocks in, gets in a front-load garbage truck on the passenger side, completes his route, returns to the garage, and clocks out. *Id.* at 7:6-18, 13:14-17, 43:9-16. His route is a commercial route. *Id.* at 21:20-24. The division he works in also has a residential rear-loader Helper position, but it is filled by a temporary worker. *Id.* at 22:2-25.

Plaintiff testified during his deposition that he never received a safety bonus, nor did he know anyone who received such a bonus. *Id.* at 86:6-12, 87:4-9. Nor has Plaintiff heard of a $50 or $100 per week safety bonus. *Id.* at 88:4-7. Plaintiff had requested bump pay or help pay when

required to perform additional tasks outside of completing his route.  *Id.* at 95:18-98:16.  Plaintiff's

normal day rate is $115.  *Id.* at 98:28.

### D.      Opt-In Plaintiffs

Several individuals have joined the case by filing notices of consent to join, including:  (1)

Albert Moreland, (2) Frank Weather Jr., (3) John A. Carter, (4) Luis Antonio Martinez, (5) Melvin

Tyler, (6) Kenneth Bethley, (7) Tony Wells, (8) Benjamin Robinson, (9) Paul Sepulveda, (10)

Marco Coates, (11) Israel Baptiste, (12) Andrew Louissaint, (13) Christopher Williams, (14)

Martel Holland, and (15) Jordon Smith.  Docs. 9, 31, 101, 126, 128, 141, 146, 169 178.[1]  Thus,

there are currently up to sixteen plaintiffs, including Thomas.

Opt-In Plaintiffs Moreland, Weather, Smith, Bethley, Tyler, and Wells ("Declaring

Plaintiffs") submitted declarations in connection with the Motion to Conditionally Certify in which

they describe their employment.  Docs. 108-15 – 108-20.  The declarations are all substantially

similar.

The Declaring Plaintiffs stated that their job duties included riding on the back of a garbage

truck, picking up garbage cans from customers' homes, and emptying customers' garbage cans

into the garbage truck.  Docs. 108-15 ¶ 10; 108-16 ¶ 7; 108-17 ¶ 9; 108-18 ¶ 9; 108-19 ¶ 10; 108-

20 ¶ 3.  Moreland was assigned pre-planned routes and was required to complete the routes

regardless of how long it took.  Docs. 108-15 ¶ 11; 108-16 ¶ 7; 108-17 ¶ 10; 108-18 ¶ 10; 108-19

¶ 11; 108-20 ¶ 3.

The Declaring Plaintiffs were non-exempt employees paid bi-weekly, working on average

five to six days per week, for more than forty hours per week without being paid time and a half

---

[1] Several other individuals filed notices of consent to join, but did not work as helpers during the
relevant time period and summary judgment was entered against them.  Docs. 144, 167.  A motion
for summary judgment is currently pending against opt-in plaintiff Israel Jean Baptiste.  Doc. 183.

for hours in excess of forty per week.  Docs. 108-15 ¶¶ 3-5; 108-16 ¶¶ 2-3; 108-17 ¶¶ 3-4; 108-18 ¶¶ 3-5; 108-19 ¶¶ 4-6; 108-20 ¶¶ 4, 6.  They were typically paid a flat rate for the day, but would receive half of their typical flat rate if they worked four hours or less during the day.  Docs. 108-15 ¶ 6; 108-16 ¶ 4; 108-17 ¶ 5; 108-18 ¶¶ 6, 12; 108-19 ¶¶ 7, 13; 108-20 ¶ 5.  The Declaring Plaintiffs were also paid a bonus if they did not miss a day of work or have any safety infractions during the pay period.  Docs. 108-15 ¶ 9; 108-16 ¶ 6; 108-17 ¶ 8; 108-18 ¶ 12; 108-19 ¶ 13; 108-20 ¶¶ 7-9.  If the Declaring Plaintiffs worked more than forty hours per week, Defendants would divide their pay by the total number of hours that they worked during the week to obtain their regular rate of pay, then pay them half of that rate for overtime hours worked that week.  Docs. 108-15 ¶ 8; 108-16 ¶ 5; 108-17 ¶ 7; 108-18 ¶ 8; 108-19 ¶ 9; 108-20 ¶ 5.

The Declaring Plaintiffs discussed the number of hours worked, overtime compensation received, and how such calculations were made with other Helpers.  Docs. 108-15 ¶ 14; 108-16 ¶ 9; 108-17 ¶ 13; 108-18 ¶ 13; 108-19 ¶ 14; 108-20 ¶ 11.  Other helpers were paid in the same way as Moreland.  Docs. 108-15 ¶ 13; 108-16 ¶ 8; 108-17 ¶ 12; 108-18 ¶ 12; 108-19 ¶ 13; 108-20 ¶ 10.

### E.     The Motion to Conditionally Certify

Plaintiff asserts that the Helpers are similarly situated because (1) Waste Pro USA created the day rate compensation structure, half day rate, and bump pay to apply across the company; (2) the same workweek, pay periods, attendance policies, break and time off policies, and benefit policies apply to all Helpers; (3) Helpers receive the same offer letters, perform the same duties, and have the same job description; (4) Waste Pro USA is a holding company that wholly owns each operating subsidiary, including Waste Pro of Florida, which have their principal places of business at the same location, and the President and CEO of Waste Pro USA is in charge of all subsidiaries; (5) all Waste Pro USA employees, including Helpers, receive an Employee

Handbook that includes the policies, procedures, and rules of the company; (6) the same timekeeping policies apply to all Helpers; (7) Waste Pro USA created disciplinary policies for Helpers and uses the same performance review policy for Helpers; (8) the same set of Helper training documents, policies and procedures are available on the intranet maintained by Waste Pro USA; and (9) common policies and procedures direct Helpers on how to perform their work. Doc. 108 at 5-12.

Defendants contend that Plaintiff has not shown that others desire to join this action and there is not sufficient similarity for a collective action. Defendants argue that (1) Plaintiff's definition of Helper is too generic because it applies to employees who assist in cleaning the yard, those who help at transfer stations or landfills, those who ride on the back of rear load residential garbage trucks, those who help roll-off drivers with commercial routes, or those who help with commercial front loading garbage trucks along beachfront routes; (2) the divisions are too autonomous and different to make collective treatment practicable; (3) the requirements of Plaintiff's job differ from those of other helpers who ride on garbage trucks; and (4) the Plaintiffs who have opted-in have not been subjected to the half day policy, others were not paid a safety bonus, and only one received help pay. Doc. 123 at 8-12. Defendants also argue that a heightened standard should apply because the parties have engaged in extensive discovery. *Id.* at 3-5. Additionally, Defendants argue that the Court must consider whether Waste Pro USA jointly employed Plaintiff, and that Plaintiff has not shown that joint employment exists. *Id.* at 16-19. Finally, Defendants argue that in the event Plaintiff prevails in this Motion for Conditional Certification, his proposed notice is insufficient. *Id.* at 19-21.

## II.      LEGAL STANDARD

The decision to conditionally certify a collective FLSA action lies within the sound discretion of the Court.  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001).  However, the Court "should satisfy itself" that there are similarly situated employees who desire to opt-in before certifying a collective action.  *Dybach v. State of Fla. Dept. of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Within the Eleventh Circuit, district courts are encouraged, but not required, to adopt a two-tiered approach to certification of classes in an FLSA case.  *Hipp*, 252 F.3d at 1219; *see also Mickles v. Country Club Inc.*, 887 F.3d 1270, 1277 (11th Cir. 2018).

Under this two-tiered approach, the court's initial decision to conditionally certify a collective action often comes early in the case.  In making this decision, the court must first "satisfy itself that there are other employees . . . [ (1) ] who desire to 'opt-in' and [ (2) ] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  *Chung v. Affordable Battery, Inc.*, Case No. 12-60612-CIV, 2012 WL 3759029, 1 (S.D. Fla. Aug.29, 2012) (quoting *Dybach*, 942 F.2d at 1567).  At the first tier, the Court's certification decision is based primarily on pleadings and affidavits, and the Court applies a "fairly lenient standard" in determining whether the plaintiffs are similarly situated.  *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir.2007).  Additionally, when there are ambiguities in the papers seeking collective action status, the court must draw all inferences in favor of the plaintiff at the preliminary certification stage.  *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629(KPF), 2013 WL 5211839, 3 (S.D.N.Y. Sept.16, 2013).

## III.    DISCUSSION

### A.    Standard

Defendants' urge that the lenient standard usually applied for conditional certification is not warranted because:  (1) the parties have engaged in substantial discovery, and (2) the similarity requirement must be applied with some rigor in a case involving a substantial number of potential plaintiffs.  Doc. 123 at 4-5.  Plaintiff briefly addresses this argument in a footnote, stating that Defendants' argument regarding a heightened standard is erroneous.  Doc. 142 at 3 n.1.

Defendants rely in part on the Court's decision in *Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-cv-2887-T-24-MAP, 2017 WL 892604, at *2-3 (M.D. Fla. Mar. 6, 2017), which involved a bifurcated discovery process, in which the first discovery phase would include collective action certification issues.  The motion for conditional certification was filed after that first discovery deadline.  *Id.* at *2.  The plaintiff sought to benefit from the fairly lenient standard applied in the first step of two-tiered certification process, but the Court explained that the two-tiered framework was not mandated by the Eleventh Circuit, and stated that "[w]here a period of discovery precedes the filing of the motion for conditional certification, the rationale for a more lenient standard at the preliminary stage of a case disappears."  *Id.* at *4.  Specifically, the Court noted that the fairly lenient standard had been applied because minimal evidence was available at the preliminary notice stage, during which the Court normally bases its decision on pleadings and affidavits.  *Id.* In *Lewis-Gursky*, the parties engaged in six months of discovery on the conditional certification question, rendering rationale for the fairly lenient pre-discovery standard inapplicable.  *Id.* Accordingly, the Court applied a more rigorous standard.  *Id.*  Other cases have similarly declined to apply the fairly lenient standard where the parties engaged in extensive discovery before conditional certification.  *Pickering v. Lorillard Tobacco Co., Inc.*, No. 2:10-CV-633-WKW, 2012

WL 314691, at *8-9 (M.D. Ala. Jan. 30, 2012) (applying a more rigorous standard because the court granted a bifurcated discovery schedule that allowed for discovery on the issue of conditional certification); *Ledbetter v. Pruitt Corp.*, No. 5:05-CV-329 (CAR), 2007 WL 496451, at *2 (M.D. Ga. Feb. 12, 2007) (finding a more rigorous standard applied where the motion for certification was filed two weeks after the discovery period expired)

Pursuant to the Case Management and Scheduling Order, entered on May 9, 2018, the deadline for a motion for conditional certification was June 15, 2018, and the discovery deadline was December 7, 2018. Doc. 87. The instant motion was, in fact, filed on June 15, well before the end of the discovery deadline. Doc. 108. This case did not involve bifurcated discovery during which Plaintiff was specifically granted time to discover matters related to certification.

Nonetheless, Defendants note that the parties' discovery made prior to the deadline included: (1) the Rule 30(b) deposition of Waste Pro USA; (2) the Rule 30(b)(6) deposition of Waste Pro of Florida; (3) the deposition of Plaintiff; (4) Answers to the Court's Interrogatories; (5) production of more than 5,700 pages of documents from Waste Pro USA and Waste Pro Florida through multiple document requests (6) answers to Plaintiff's interrogatories to Waste Pro USA and Waste Pro Florida; and (7) responses to Plaintiff's requests for admissions to Waste Pro USA. Doc. 123 at 4-5. Indeed, the evidence submitted to support the instant motion includes more than the pleadings or affidavits. Doc. 108. Plaintiff submitted evidence including deposition testimony of Waste Pro of Florida's representative, a Waste Pro USA Human Resources Audit Report that included an analysis of payroll records, employee handbooks, e-mails, and various employee documents. *See generally id.*

While the evidence before the Court certainly surpasses that generally considered at the notice stage, it is not so substantial so that application of a more rigorous standard is warranted.

Discovery was not complete, or near to being complete, at the time the motion was filed. Accordingly, the discovery conducted in this case does not justify departing from a lenient standard.

Defendants also argue that "the similarity requirement must be applied with some rigor" in a case involving a substantial number of potential plaintiffs. Doc. 123 at 5. Defendants rely on *Holmes v. Quest Diagnostics, Incorporated*, No. 11-80567-Civ-Williams, 2012 WL 12876965, at *3 (S.D. Fla. June 14, 2012),[2] which potentially involved more than 15,000 plaintiffs. The district court relied on a statement in *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT, 2006 WL 2085312, at *4 n.4 (N.D. Ga. July 25, 2006), in which the Court had already determined that the fairly lenient standard did not apply because of the amount of discovery undertaken by the parties, that some rigor was required where the potential plaintiffs were so numerous. Defendants do not cite to any additional cases, nor could the Court locate any, where the number of potential plaintiffs alone warranted application of a more rigorous standard. Accordingly, the Court will not apply a more rigorous standard in this case.

## B.     Employees Who Desire to Opt In

The first requirement for conditional certification is that Plaintiff demonstrate that other employees desire to opt-in. *Alvarez v. Sun Commodities, Inc.*, No. 12-60398-CIV, 2012 WL 2344577, at *2 (S.D. Fla. June 20, 2012) (citing *Dybach*, 942 F.2d 1562, 1567-68). There is "no firm line that has been drawn regarding the number of opt-ins necessary, or magic language required, to convince the court that additional putative plaintiffs will join or desire to join the action." *Campbell v. Pincher's Beach Bar Gill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2016 WL

---

[2] Defendants actually provide a citation to *Lewis-Gursky*, but the quotation cannot be found in that case. The Court's research indicates that the quote cited to by Defendants appears in *Holmes*.

3626219, at *5 (M.D. Fla. July 7, 2016).  However, in showing that others desire to opt in, Plaintiff "cannot rely on speculative, vague, or conclusory allegations." *Alvarez*, 2012 WL 2344577, at *2 (citing *Rodgers v. CVS Pharm., Inc.*, No. 8:05-CV770T-27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2003)).  "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007).

The fifteen current opt-in plaintiffs, supported by the declarations of the Declaring Plaintiffs, are sufficient to show that other employees wish to join in this action.  *Gonzalez v. TZ Ins. Solutions, LLC*, No. 8:13-cv-2098-T-33EAJ, 2014 WL 1248154, at *2 (M.D. Fla. Mar. 26, 2014) (stating that "the presence of five opt-in plaintiffs, each having filed a declaration describing their working conditions and their desire to join in the suit, satisfies the Court that others desire to join in the action.").  Defendants' assertion that the declarations are too vague is not well-founded. The Declaring Plaintiffs sufficiently describe their jobs and pay structure based on their personal knowledge to meet the fairly lenient standard of showing that they desire to opt into this action. Docs. 108-15 – 108-20.

C.    **Similarly Situated**

The term "similarly situated" is not defined in the FLSA, nor has the Eleventh Circuit stated a precise definition of the term.  *Lewis-Gursky*, 2017 WL 892604, at *3 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259-60 (11th Cir. 2008)).  To determine whether employees are similarly situated, the Court looks to whether the employees have similar job requirements and pay provisions.  *Id.* (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)).  A position need not be identical to the positions held by putative class members, but

the plaintiff must demonstrate some commonality between the basis for his or her claims and those of the proposed class beyond the mere facts and duties and pay provisions. *Id.* (citing *Hipp v. Liberty Nat'l Life Ins. Co.*¸252 F.3d 1208, 1217 (11th Cir. 2001); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).

Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit, or expert evidence. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004). In determining whether the putative plaintiffs are similarly situated, the court considers, among other factors:

> (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographical location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; [and] (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Franco v. Bank of Am. Corp.*, 691 F. Supp. 2d 1324, 1326 (M.D. Fla. 2010).

Conditional certification may be granted "based on the existence of only a few other workers." *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-CV-1306-J-34JRK, 2014 WL 2625181, at *9 & n.24 (M.D. Fla. June 12, 2014); *Torres v. Nature Coast Home Care LLC*, No. 8:16-CV-1970-T-30MAP, 2016 WL 5870217, at *2 (M.D. Fla. Oct. 7, 2016) ("even one opt-in notice can be sufficient to meet the first requirement for conditional certification"). But in cases involving a broad putative class, "federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify [the] broad class based only on the conclusory allegations of a few employees." *Simpkins v. Pulte Home Corp.*, No. 6:08–cv–130–Orl–19DAB, 2008 WL 3927275, at *2 & n.3 (M.D. Fla. Aug. 21, 2008); *Kubiak*, 2014 WL 2625181 at *9.

The prong regarding title points in favor of conditional class certification.  The corporate representative for Waste Pro of Florida, Keith Banasiak, testified that the position of Helper exists in Waste Pro of Florida, but not within Waste Pro USA, which did not employ people or own any trucks.  Doc. 123-2 at 23:16-24:14. He further testified that in Waste Pro of Florida, a "helper is essentially required to load garbage and/or recycling and other solid waste, meaning yard waste, into the back of a rear load truck."  *Id.* at 30:22-31:1. Helpers worked at facility cites and reported to route supervisors or route managers.  *Id.* at 31:5-12.  Job positions, including that of Helper are posted on the Waste Pro USA webpage.  *Id.*at 101:4-12.  Jobs are posted by an HR manager for Waste Pro of Florida using a job description available on the Waste Pro USA intranet.  *Id.* at 99:20-101:8.  Plaintiff submitted the Helper position description in support of this Motion to Conditionally Certify.  Although Defendants submitted evidence that the individual duties vary depending on the type of truck and type of route, the evidence demonstrates, generally, that Helpers assist in collecting waste and ensuring its transmission from a receptacle to the truck.  Accordingly, the evidence demonstrates that the plaintiffs held the same job title.

Regarding geographic location, this factor leans against conditional certification.  Plaintiff seeks certification throughout the Waste Pro USA company.  Doc. 108 at 22-23.  However, the factor of time period weighs in favor of conditional certification.  The alleged FLSA violations occurred between September 27, 2014 to the present.  Doc. 108 at 1.

The remaining factors—whether the plaintiffs were subjected to the same policies and practices, whether the policies and practices were established in the same manner and by the same decision maker, and the degree to which the actions constituted the claimed violations are similar—are more difficult.  The parties both submitted evidence regarding the applicability of

14

Waste Pro USA's policies to its subsidiaries, and similarities and dissimilarities between regions and divisions.

Defendants submitted the declaration of Michael Allen, a Waste Pro USA employee, who stated that each of the subsidiaries "determines how to staff the various locations including operations management, accounting and marketing personnel, and laborers such as mechanics, drivers and various types of helpers."  Doc. 123-1 ¶ 5.  Each region contains multiple divisions. *Id.*

According to Banasiak, Waste Pro of Florida consists of five regions:  the southeast region, west coast region, northeast region, the central region, and the panhandle.  Doc. 123-2 at 14:4-7. Each region is managed by a Regional Vice President, who "are theoretically the CEOs in the field . . . ."  *Id.* at 32:8-10.  Regional Vice Presidents had access to Waste Pro USA documents, such as its employee handbook or training materials, which contain policies that they could adopt or alter. *Id.* at 120:15-25, 144:4-145:12.  For example, Banasiak's region added an extra holiday, provides higher insurance coverage, and increased the allowed vacation time.  *Id.* at 179:19-181:1. In the whole of Waste Pro USA, there are eight Regional Vice Presidents.  *Id.* at 33:8-10.  Ultimately, the Regional Vice Presidents report to the CEO of Defendants, John Jennings.  *Id.* at 32:10-14.

Waste Pro USA has various departments that provide services or resources to its subsidiaries.  Waste Pro USA maintains an intranet that provides forms, data, and information to its subsidiaries. Doc. 123-2 at 90:7-15.  Waste Pro USA provides human resources support, which provides guidance and support when questions arise at a local level for Waste Pro of Florida.  Doc. 123-2 at 58:21-24.  Additionally, Waste Pro USA has a safety department responsible for informing subsidiaries of changes in safety, behaviors, habits, and things of that nature.  *Id.* at 70:19-22.  It also has a maintenance department "responsible for changes in equipment [and]

service levels." *Id.* at 72:15-73:13.  Waste Pro USA also maintains an accounting department that handles financial results performance and asset management based on financial information provided by each region.  *Id.* at 76:12-77:13.

Defendants submitted a declaration by David Schneider, the Regional Vice President for the Northeast Region of Waste Pro of Florida, who stated that his region has dedicated management, accounting, marketing, operations, and human resources teams who report to him, and who he has complete discretion to replace.  Doc. 123-3 ¶¶ 1, 4.  He makes operational and financial decisions, markets their services, decides which contracts to pursue and negotiates the terms, obtains trucks and equipment, prepares budgets, makes staffing decisions, decides compensation, and interfaces with customers.  *Id.* ¶ 5.

Schneider's region does not employ any Helpers who assist on commercial beachfront routes, such as Plaintiff.  *Id.* ¶ 6.  The Helpers who are employed in his region have schedules decided based on the terms of municipal and commercial contracts.  *Id.*  He was previously a division manager, and filled and trained for Helper positions within his discretion without use of Waste Pro USA's program.  *Id.* ¶¶ 6-8.  Additionally, within his region, Helpers are not paid a weekly or bi-weekly safety bonus.  *Id.* ¶ 9.  Certain divisions pay bonuses for performing extra tasks, but the determination is not based on a uniform policy or practice.  *Id.* ¶ 12.

Defendants also submitted the declaration of Ralph Mills, the Regional Vice President for the Coastal Region of Waste Pro of Florida, where Plaintiff works.  Doc. 123-4.  He stated that as Regional Vice President, his is responsible for all aspects of the operations and finances for all divisions in his region, which includes landfill, transfer stations, and hauling divisions.  *Id.* ¶¶ 2-3.  His responsibilities include bidding on and negotiating contracts, staffing and equipping divisions, budgeting, and performing solid waste collection and disposal and recycling services in

a professional manner. *Id.* ¶ 5. The types of Helpers hired differs by division according to the terms of the municipal and commercial contracts within those divisions. *Id.* ¶ 6.

Helpers within Mills' region receive on-the-job training in lieu of classroom training, and training for commercial Helpers differs from that of residential Helpers. *Id.* ¶¶ 9-10. Where commercial Helpers ensure that a Driver can access a dumpster with mechanical forks, a residential helper rides on the back of a truck, jumps down, and lifts and dumps a container into the truck. *Id.* ¶¶ 11-12. Helpers were not paid weekly or bi-weekly safety bonuses. *Id.* ¶ 17. Indeed, Mills indicated that many of the employment policy suggestions from Waste Pro USA are not used for Helpers because the suggestions are not useful for that position. *Id.* ¶ 19.

Defendants also submitted the declaration of Russell Mackie, the Regional Vice President for the Southeast Region of Waste Pro of Florida. Doc. 123-5. He stated that he personally made all operations and financial decisions, and that he has dedicated management, accounting, marketing, operations, and human resources personnel in the divisions within his region. *Id.* ¶ 2. Under his leadership, the decisions determine what contracts to pursue, decide how to price bids, decide how to market services, and make personnel and equipment decisions. *Id.* Although Mackie uses Jennings as a sounding board, he stated that he ultimately sets decisions regarding what policies are appropriate for the Southeast Region of Florida. *Id.* ¶ 10.

Within Mackie's region, Waste Pro of Florida employs residential Helpers, workers who help at the transfer station, beachfront commercial Helpers, roll off Helpers, and Helpers in the yard. *Id.* ¶ 5. These Helpers receive on-the-job training. *Id.* ¶ 6. The number of hours and days, and the shift times are determined in each division depending on the route assigned to a Helper, which decision is made locally. *Id.* ¶ 8.

Regarding pay structure, Allen stated that Waste Pro USA's sole role was to ensure payrolls were timely submitted.  Doc. 123-1 ¶ 10.  Prior to 2014, local offices employed their own payroll personnel, and even after 2014, the Regional Vice Presidents hired Human Resources Specialists to oversee all human resource functions at a local level, but the subsidiaries remained autonomous. *Id.* ¶ 7.  Allen stated that Waste Pro USA does not mandate that the day rate or other form of compensation be used.  *Id.* ¶ 8.  However, Banasiak testified that the daily rate pay methodology is used by all regions of Waste Pro USA.  Doc. 108-3 at 90:7-15.  With respect to bonuses, Allen stated that Waste Pro USA did not mandate that subsidiaries pay non-discretionary weekly or bi-weekly bonuses, nor was it aware of which divisions did or did not do so.  Doc. 123-1 ¶ 9.

Banasiak testified that the half day rate was a compensation for work that was less than a daily task, and he had heard the term in multiple regions within Florida.  Doc. 108-3 at 124:1-8.  Banasiak indicated that the half day rate has not been used since approximately 2017.  *Id.* at 124:15-19.  Use of the half day rate was discussed during a teleconference and the regional vice presidents determined that there was no benefit to paying it.  *Id.* at 124:22-125:6.  Banasiak's discussions with other Regional Vice Presidents indicated that the half day rate was used in regions other than Florida.  *Id.* at 125:14-21.  Banasiak indicated that the half day rate was used if a Helper performed a task other than his or her normal daily task.  *Id.* at 126:11-17.

Benefits, including 401(k) and health insurance, are provided by Waste Pro USA.  Doc. 123-2 at 108:18-20.  Bonuses are paid by the region and health reimbursement accounts are managed locally.  *Id.* at 109:2, 109:25-110:2.  Workers who work on route and take a lunch break receive a paid lunch break in all regions.  *Id.* at 110:7-17.

Division managers set starting pay for Helpers and the amount is not consistent across Waste Pro of Florida.  *Id.* at 181:2-10.  No set policy exists and in some divisions, Helpers are paid

the same regardless of experience level, whereas Helpers in other divisions may be paid more if they have experience. *Id.* at 182:12-183:3. For example, within the Northeast Region of Florida, Helpers in Gainesville have a starting day rate of $105, regardless of their experience level, whereas the starting day rate in Jacksonville is $115, with Helpers in Jacksonville being eligible for a 2% higher rate of pay. Doc. 123-3 ¶ 10. Similarly, within the Coastal Division of Florida, the starting pay in Tallahassee is a day rate of $115, regardless of experience level, in Crestview it is $110, regardless of experience level, and in Pensacola, it is $115 for inexperienced Helpers and $120 for experienced Helpers. Doc. 123-4 ¶ 15. Within the Southeast Region of Florida, Helpers in Fort Pierce receive a starting day rate of $105, with experienced Helpers being eligible for up to a 2% higher rate of pay, whereas Helpers in Palm Beach receive a starting day rate of $110 regardless of experience level, and Helpers in Pembroke Pines receive a starting day rate of $120, regardless of experience level. Doc. 123-5 ¶ 7.

In this vein, Defendants submitted the declaration of Frank Kramer, the Division Manager for the Lake City Division of Waste Pro of Florida. Doc. 123-8. Kramer stated that he has the sole discretion to hire residential Helpers within his division and sets the pay himself. *Id.* ¶¶ 2-3. Residential Helpers in his division never receive a non-discretionary bonus for performing extra work, and no help or bump pay is paid in his division. *Id.* ¶ 7. However, at one point, residential Helpers within his division were paid safety bonuses, but this stopped on November 25, 2012, when he decided to roll the safety bonus into the daily job rate. *Id.* ¶ 8.

Additionally, Plaintiff submitted a Human Resources Audit Report which states that it was "Prepared For Waste Pro USA, Inc." by Ford Harrison. Doc. 108-8. One section within the Report is an "Analysis of Time and Payroll Records." *Id.* at 4. In this analysis, Ford Harrison indicates that overtime wages should be calculated by taking the gross wages earned in a workweek,

including bonuses, dividing the figure by the total hours work, and multiplying this rate by 0.5. Doc. 108-8 at 8.  That rate should be paid for the time worked over forty hours in the workweek. *Id.*  Ford Harrison wrote that "Waste Pro does pay its employees a half time premium for all hours worked over 40 but appears to be calculating its employees regular rate incorrectly." *Id.* at 11. The Time and Pay Analysis also contains information related to the bump pay. *Id.* at 7, 10. However, Allen indicated that the information used by Ford Harrison applied to the Pembroke Pines division and was not provided to Waste Pro USA for approval. *Id.* ¶ 12.

The evidence submitted meets the fairly lenient standard to show that Helpers held similar positions and were subjected to the same compensation policies.  The uniform job description, dissemination of policies, use of the same policy of compensating Helpers at a daily rate, and use of bonuses demonstrate common treatment of Helpers.

Nonetheless, Defendants contend that conditional certification is inappropriate because the proposed class included those who were only possibly affected by either the half-day practice or who received bonuses, and may include people who were not affected by either policy.  Doc. 123 at 15-16.  Mills stated in his declaration that Plaintiff's payroll records show that despite working less than four hours on June 15, 2018, he was paid a full day.  Doc. 123-4 ¶ 18.

Mackie stated in his declaration that Opt-In Plaintiff Moreland worked four hours on March 12, 2016, but a review of his payroll records show that he received pay for a full day, and that Moreland's declaration stating that he would be paid half of his typical flat rate for working four hours or less in a day is incorrect.  Doc. 123-5 ¶ 3.

Defendants submitted the declaration of Roland Joyner, the Regional Vice President of Waste Pro of Mississippi, Inc., who stated that Tyler and Bethley worked as Residential Helpers. Doc. 123-6 ¶¶ 4-5.  Joyner stated that, based on a review of their payroll records, neither Opt-In

Plaintiff were ever paid a half day during their employment, were never paid safety bonuses, and were never paid weekly or bi-weekly bonuses.  *Id.* ¶ 8.

Defendants also submitted the declaration of Adolfo Covelli, the Division Manager for the Fort Pierce Division of Waste Pro of Florida, where Carter was employed.  Doc. 123-7. ¶¶ 1-2.  Carter initially worked as a residential Helper, but in September 2015, he became a non-CDL Driver, at which point he alternated positions and his duties varied by week.  *Id.* ¶¶ 5-7.  Carter's payroll records show that on eight different occasions he worked four hours and was paid his full daily or job rate.  *Id.* ¶ 8.

These factual issues showing variations are not dispositive at the stage for conditional certification.  *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335-36 (M.D. Fla. 2007) ("[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." (quoting *Scott v. Heartland Home Fin., Inc.*, No. 01:05-cv-2812, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006)).  These matters are more properly addressed at a later stage of the proceedings.  *Id.*

Accordingly, Plaintiff has demonstrated to the Court's satisfaction, given the fairly lenient standard, that there are other similarly situated employees who desire to opt in to this action and, therefore, the Motion for Conditional Certification will be granted.

### D.    Joint Employers

Plaintiff urges that Defendants cannot raise joint employer issues at this stage.  Doc. 108 at 21.  Plaintiff relies on this Court's decision in *Nadreau v. Lush Cosmetics, LLC*, No. 2:10-CV-298, FtM-36SPC, 2011 WL 13143146 (M.D. Fla. Jan. 28, 2011), which involved two defendants, Lush Costmetics NY, LLC and Lush Cosmetics, LLC.  Defendants in *Nadreau* argued that

Plaintiffs did not present evidence showing that the employees of the two corporations belonged in one representative class. *Id.* at *1. The Court recognized that "[i]n instances where a motion for conditional certification involves a potential class of employees that worked for separate but related employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." *Id.* at *3 (citing *Manning v. Goldbelt Falcon, LLC*, 2010 WL 3906735, at *3 (D.N.J. Sept. 29, 2010); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994)). The plaintiffs in *Lush* had presented evidence to the Court that the defendant corporations held themselves out to the public as the same company, and that managers had similar e-mail addresses, identical job descriptions, attended the same meetings, and all considered themselves to be employed by the same company. *Id.* The plaintiffs also provided evidence that the defendant companies used a similar policy or approach for compensation and hours. *Id.* Accordingly, the Court concluded that the plaintiffs sufficiently established that the companies were considered one enterprise for the purposes of conditional certification. *Id.*

Other cases agree with the statement in *Nadreau* regarding the propriety of addressing joint employment at the conditional certification stage. *Calvo v. Summit Broadband Inc.*, No. 2:16-cv-746-FtM-38MRM, 2018 WL 3635104, at *11 (M.D. Fla. Apr. 17, 2018); *Reece v. United Home Care of N. Atl., Inc.*, No. 1:12-CV-2070-RWS, 2013 WL 895088, at *5 (N.D. Ga. Mar. 8, 2013). Defendants, nonetheless, urge that the Court must address whether they are joint employers. Doc. 123 at 16. Defendants do not provide authority for why the Court should depart from its precedent, and the Court declines to do so. Plaintiff has supplied evidence that subsidiaries of Waste Pro USA have access to the same policy and procedure documents, there are resources available from Waste Pro USA for its subsidiaries, the companies have the same CEO, and Regional Vice Presidents attend meetings together. Plaintiff has supplied sufficient evidence for the conditional

certification stage such that the Court will not address the matter of whether Waste Pro USA and Waste Pro of Florida were joint employers.

### E.     Notice

Plaintiff seeks to include all of Waste Pro USA's locations nationwide where Helpers were employed during the FLSA Collective Period and paid by the day rate method for the time period within the three-year statute of limitations for willful violations of the FLSA.  Doc. 108 at 23-24. Plaintiff provided a proposed Form of Notice and Consents.  Docs. 108-36, 108-37.  Additionally, Plaintiff requests that the Court order Defendants to produce employee contact information to ensure that accurate and timely notice concerning the pendency of the collective action is disseminated to putative class members.  Doc. 108 at 25.

Defendants contend that the proposed notice is misleading because it:  (1) states that it is "Court-Authorized;" (2) refers to "Plaintiffs" despite the fact that Plaintiff is currently the only plaintiff in this action; (3) appears to be an attempt by Plaintiff's counsel to solicit clients; (4) contains language suggesting that Defendants may retaliate against Plaintiffs if they participate in the case; (5) fails to notify potential class members that they (a) have the right to engage their own counsel, (b) may be required to respond to discovery requests, (c) may be required to travel to the Middle District at their own expense for a deposition or to be a witness during trial, and (d) may be responsible for Defendants' attorneys' fees and costs should Defendants prevail.  Doc. 123 at 20.  Defendants also contend that the proposed notice is deficient because it does not advise potential plaintiffs that:  (1) they have a right to their own counsel, (2) they are obligated to participate at their own expense in discovery and at trial, (3) they are potentially obligated for Defendants' attorneys' fees and costs, and (4) the case may later be de-certified.  *Id.*  Finally, Defendants object to Plaintiff's request that a reminder notice be sent after the original notice.

In his Reply, Plaintiff states that should the Court grant the Motion for Conditional Certification, the Court should order the parties to confer and submit a joint proposed Notice, or competing versions, within five days of the Court's Order.  Plaintiff indicated that he is willing to confer with Defendants and attempt to resolve disputes.  Accordingly, the Court will grant the parties fourteen (14) days within which to submit a jointly proposed notice, or competing notices.

**ORDERED AND ADJUDGED**:

1.       Plaintiffs' Motion to Conditionally Certify an FLSA Collective Action and Authorize Notice to Putative Opt-In Plaintiffs and Incorporated Memorandum of Law (Doc. 108) is **GRANTED**.

2.       The parties shall confer and submit a jointly proposed notice within **FOURTEEN (14) DAYS** of the date of this Order.  Should the parties be unable to agree on a proposed notice, they shall each submit proposed notices.

3.       Additionally, the parties shall confer on a class notice plan and issues that may arise associated with the administration of the class, including the establishment of an opt-in period, and shall advise the Court of these efforts and whether there are issues that require the Court's resolution within **FOURTEEN (14) DAYS** of the date of this Order.

4.       Defendants shall produce to Plaintiff in an electronic or computer-readable format the full name, address(es), telephone numbers, email address(es), and dates and locations of employment for each of the collective members on or before **April 9, 2019**.

**DONE AND ORDERED** in Tampa, Florida on March 12, 2019.

Charlene Edwards Honeywell
United States District Judge

24

Copies to:
Counsel of Record and Unrepresented Parties, if any